IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

CALYN BOYKO,

Plaintiff,

v.

REALTY INCOME CORPORATION, MICHAEL D. MCKEE, KATHLEEN R. ALLEN, JACQUELINE BRADY, A. LARRY CHAPMAN, REGINALD H. GILYARD, PRIYA CHERIAN HUSKINS, GERARDO I. LOPEZ, GREGORY T. MCLAUGHLIN, RONALD L. MERRIMAN, and SUMIT ROY,

Defendants.

**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS AND JURY DEMAND**

Plaintiff Calyn Boyko ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

**NATURE OF THE ACTION**

1. This is an action against Realty Income Corporation ("Realty Income" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in connection with the proposed merger (the "Proposed Transaction") of Realty Income and VEREIT, Inc. ("VEREIT").

1

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the Company owns and rents property in this District.

5. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6. Plaintiff is, and has been at all relevant times hereto, an owner of Realty Income common stock.

7. Defendant Realty Income is a real estate investment trust that provides its shareholders with dependable monthly income. The Company's monthly dividends are supported by the cash flow from over 6,500 real estate properties owned under long-term lease agreements with commercial clients. The Company is incorporated in Maryland. The Company's common stock trades on the New York Stock Exchange under the ticker symbol, "O."

8. Defendant Michael D. McKee ("McKee") is Non-Executive Chairman of the Board of the Company.

9. Defendant Kathleen R. Allen ("Allen") is a director of the Company.

10. Defendant Jacqueline Brady ("Brady") is a director of the Company.

11. Defendant A. Larry Chapman ("Chapman") is a director of the Company.

12. Defendant Reginald H. Gilyard ("Gilyard") is a director of the Company.

13. Defendant Priya Cherian Huskins ("Huskins") is a director of the Company.

14. Defendant Gerardo I. Lopez ("Lopez") is a director of the Company.

15. Defendant Gregory T. McLaughlin ("McLaughlin") is a director of the Company.

16. Defendant Ronald L. Merriman ("Merriman") is a director of the Company.

17. Defendant Sumit Roy ("Roy") is Chief Executive Officer, President, and a director of the Company.

18. Defendants McKee, Allen, Brady, Chapman, Gilyard, Huskins, Lopez, McLaughlin, Merriman, and Roy are collectively referred to herein as the "Individual Defendants."

19. Defendants Realty Income and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A. The Proposed Transaction

20. On April 29, 2021, Realty Income and VEREIT announced that they had entered into a definitive merger agreement by which Realty Income would acquire VEREIT in an all-stock transaction. Under the terms of the agreement, VEREIT shareholders will receive 0.705 shares of Realty Income stock for every share of VEREIT stock they own. The press release announcing the Proposed Transaction states, in pertinent part:

**Realty Income To Merge With VEREIT® In All-Stock Transaction**

- All-Stock Transaction Expected to Generate 10%+ Accretion to Annualized AFFO per Share
- Enhanced Size, Scale, Diversification and Synergies to Drive Future Growth and Value Creation

3

- Expect to Spin-Off Assets in Dedicated Portfolio of Office Properties
- Conference Call to Discuss Transaction to be Held at 8:00am ET

NEWS PROVIDED BY
**Realty Income Corporation; VEREIT, Inc.**
Apr 29, 2021, 07:00 ET

SAN DIEGO and PHOENIX, April 29, 2021 /PRNewswire/ -- Realty Income Corporation (NYSE: O) ("Realty Income"), The Monthly Dividend Company®, and VEREIT, Inc. (NYSE: VER) ("VEREIT") today announced that the two companies have entered into a definitive merger agreement by which Realty Income will acquire VEREIT in an all-stock transaction, creating a combined company with an enterprise value of approximately $50 billion. Under the terms of the agreement, VEREIT shareholders will receive 0.705 shares of Realty Income stock for every share of VEREIT stock they own.

Immediately following the closing, the companies expect to effectuate a taxable spin-off of substantially all of the office properties of both companies into a new, self-managed, publicly traded REIT ("SpinCo"). Following the merger and the spin-off, Realty Income will continue as the surviving public entity. Realty Income and former VEREIT shareholders are expected to own approximately 70% and 30%, respectively, of both Realty Income and SpinCo.

\*     \*     \*

**"SpinCo" Pro Forma Metrics**

The planned spin-off of the office portfolio maintains Realty Income's preferred portfolio mix, consistent with its focused investment strategy of acquiring high quality real estate leased primarily to retail clients that have a service, non-discretionary, and/or low-price-point component to their business, and industrial clients that are primarily investment grade rated companies and leaders in their respective industries.

Upon completion of the planned spin-off, shareholders of both companies are expected to receive a stock distribution in a separate, publicly traded REIT, subject to customary conditions. The anticipated spin-off of substantially all of the combined companies' office properties is expected to result initially in a pure-play, self-managed portfolio of 97 domestic office properties.

\*     \*     \*

**Leadership and Governance**

Realty Income will continue to be led by President and Chief Executive Officer Sumit Roy and its existing senior management team. Michael D.

4

McKee will remain Realty Income's Non-Executive Chairman of the Board of Directors. Upon closing, two VEREIT directors will be appointed to the Realty Income board.

**Timing and Approval**

The merger is subject to customary closing conditions, including the approval of both Realty Income and VEREIT shareholders, and is expected to close during the fourth quarter of 2021. The boards of directors of both companies have unanimously approved the transaction.

**Advisors**

Moelis & Company LLC is serving as lead financial advisor, Wells Fargo Securities is serving as financial advisor, and Latham & Watkins LLP is acting as legal advisor to Realty Income. J.P. Morgan Securities LLC is serving as exclusive financial advisor and Wachtell, Lipton, Rosen & Katz is acting as legal advisor to VEREIT.

\*   \*   \*

**About Realty Income**

Realty Income, The Monthly Dividend Company®, is an S&P 500 company dedicated to providing stockholders with dependable monthly income. The company is structured as a REIT, and its monthly dividends are supported by the cash flow from over 6,500 real estate properties owned under long-term lease agreements with commercial clients. To date, the company has declared 610 consecutive common stock monthly dividends throughout its 52-year operating history and increased the dividend 110 times since Realty Income's public listing in 1994 (NYSE: O). The company is a member of the S&P 500 Dividend Aristocrats® index. Additional information about the company can be obtained from the corporate website at www.realtyincome.com.

**About VEREIT**

VEREIT is a full-service real estate operating company which owns and manages one of the largest portfolios of single tenant commercial properties in the U.S. The Company has total real estate investments of $14.6 billion including approximately 3,800 properties and 89.5 million square feet. VEREIT's business model provides equity capital to creditworthy corporations in return for long-term leases on their properties. VEREIT is a publicly traded Maryland corporation listed on the New York Stock Exchange. VEREIT uses, and intends to continue to use, its Investor Relations website, which can be found at www.VEREIT.com, as a means of disclosing material nonpublic information and for complying with its disclosure obligations under Regulation FD. Additional information about VEREIT can be found through social media platforms such as Twitter and LinkedIn.

21.     On June 4, 2021, Defendants caused to be filed with the SEC a Form S-4 Registration Statement (the "Registration Statement") under the Securities Act of 1933 in connection with the Proposed Transaction.

**B. The Registration Statement Contains Materially False and Misleading Statements and Omissions**

22.     The Registration Statement, which recommends that Realty Income shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (i) Realty Income's and VEREIT's financial projections; (ii) the financial analyses performed by Realty Income's financial advisor, Moelis & Company LLC ("Moelis"), in connection with its fairness opinion; (iii) potential conflicts of interest involving Moelis; and (iv) potential conflicts of interest involving Company insiders.

23.     The omission of the material information (referenced below) renders the following sections of the Registration Statement false and misleading, among others: (i) Background of the Mergers; (ii) Realty Income's Reasons for the Mergers; Recommendations of the Realty Income Board of Directors; (iii) Opinion of Realty Income's Financial Advisor; (iv) Realty Income Unaudited Prospective Financial Information; and (v) VEREIT Unaudited Prospective Financial Information.

24.     Unless and until the material misstatements and omissions (referenced below) are remedied before the anticipated shareholder vote on the Proposed Transaction, Realty Income shareholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

1. **Material Omissions Concerning Realty Income's and VEREIT's Financial Projections**

25. The Registration Statement omits material information concerning Realty Income's and VEREIT's financial projections.

26. With respect to the Realty Income Standalone Projections, the Registration Statement fails to disclose: (1) all line items underlying (i) Total Revenue, (ii) Total Net Operating Income, (iii) EBITDA, (iv) Funds from Operations, and (v) Adjusted Funds from Operations; (2) Realty Income's net income projections; and (3) a reconciliation of all non-GAAP to GAAP metrics.

27. With respect to the VEREIT Adjusted Standalone Projections, the Registration Statement fails to disclose: (1) all line items underlying (i) Total Revenue, (ii) Total Net Operating Income, (iii) EBITDA, (iv) Funds from Operations, and (v) Adjusted Funds from Operations; (2) VEREIT's net income projections; and (3) a reconciliation of all non-GAAP to GAAP metrics.

28. With respect to the VEREIT Standalone Projections, the Registration Statement fails to disclose: (1) all line items underlying (i) Cash Net Operating Income, (ii) Adjusted Funds from Operations, and (iii) Net Acquisitions; (2) VEREIT's net income projections; and (3) a reconciliation of all non-GAAP to GAAP metrics.

29. With respect to the Realty Income Adjusted Standalone Projections, the Registration Statement fails to disclose: (1) all line items underlying (i) Cash Net Operating Income, (ii) Adjusted Funds from Operations, and (iii) Net Acquisitions; (2) Realty Income's net income projections; and (3) a reconciliation of all non-GAAP to GAAP metrics.

30. The disclosure of this information is material because it would provide the Company's shareholders with a basis to project the future financial performance of the Company and combined company and would allow shareholders to better understand the financial analyses

performed by the Company's financial advisor in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by Defendant(s) and the Company's financial advisor, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisor's fairness opinion in determining whether to vote for or against the Proposed Transaction.

31.     When a company discloses non-GAAP financial metrics in a Registration Statement that were relied upon by its board of directors in recommending that shareholders exercise their corporate suffrage rights in a particular manner, the company must also disclose, pursuant to SEC Regulation G, all projections and information necessary to make the non-GAAP metrics not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial metrics disclosed or released with the most comparable financial metrics calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.[1]

32.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 2. Material Omissions Concerning Moelis' Analyses

33.     In connection with the Proposed Transaction, the Registration Statement omits

---

[1] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (footnotes omitted) (last visited June 16, 2021) ("And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.").

material information concerning analyses performed by Moelis.

34.     The Registration Statement fails to disclose the following concerning Moelis' "*Dividend Discount Model Analysis*": (1) the terminal values of Realty Income and VEREIT; and (2) the individual inputs and assumptions underlying the (i) range of discount rates of 6.25% to 8.75% and of 7.00% to 10.00%, (ii) range of multiples of 16.50x to 21.00x and of 12.50x to 15.50x, and (iii) 4.0% growth rate.

35.     With respect to the precedent premia paid analysis in which Moelis reviewed premia paid in selected REIT transactions announced since 2015, the Registration Statement fails to disclose each transaction and the individual premiums paid therein.

36.     With respect to Moelis' analysis of the financial terms of certain transactions in the net lease sector with transaction values over $1 billion that were completed since 2015, the Registration Statement fails to disclose the individual multiples and financial metrics of each transaction Moelis observed in its analyses.

37.     The valuation methods, underlying assumptions, and key inputs used by Moelis in rendering its purported fairness opinion must be fairly disclosed to Realty Income shareholders. The description of Moelis' fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses. Without the information described above, Realty Income shareholders are unable to fully understand Moelis' fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

        **3.     Material Omissions Concerning Potential Conflicts of Interest Involving Moelis**

38.     The Registration Statement omits material information concerning potential

9

conflicts of interest involving Moelis.

39. The Registration Statement provides that "Moelis is providing investment banking services to Realty Income in connection with the Spin-Off and potential alternatives thereto, and may receive compensation for such services."

40. The Registration Statement, however, fails to disclose the amount of compensation Moelis received or expects to receive for "providing investment banking services to Realty Income in connection with the Spin-Off and potential alternatives thereto[.]"

41. The Registration Statement provides that "Moelis has provided investment banking and other services to Realty Income unrelated to the Mergers and in the future may provide such services to Realty Income, and has received and may receive compensation for such services." The Registration Statement further provides that, "[i]n the past two years prior to the date of its opinion, Moelis [] acted among other things as a co-manager in various equity and debt offerings undertaken by Realty Income, for which Moelis received approximately $200,000 in aggregate compensation[.]"

42. The Registration Statement, however, fails to disclose whether the $200,000 in fees Moelis purportedly received includes compensation for all "investment banking and other services to Realty Income unrelated to the Mergers" within the past two years of the date of its fairness opinion. *See* 17 C.F.R. § 229.1015(b)(4) (requiring disclosure of all material relationships between a company and its financial advisors and the compensation received by the advisors during the past two years).

43. Disclosure of a financial advisor's compensation and potential conflicts of interest to shareholders is required due to their central role in the evaluation, exploration, selection, and implementation of strategic alternatives and the rendering of any fairness opinions. Disclosure of

a financial advisor's potential conflicts of interest may inform shareholders on how much weight to place on that analysis.

44. The omission of the above-referenced information renders the Registration Statement materially incomplete and misleading. This information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 4. Material Omissions Concerning Company Insiders' Potential Conflicts of Interest

45. The Registration Statement omits material information concerning potential conflicts of interest involving Company insiders.

46. The Registration Statement provides the following:

**Interests of Realty Income Directors and Executive Officers in the Mergers**

In addition to their interests in the Mergers as stockholders, the directors and executive officers of Realty Income have interests in the Mergers that may be different from, or in addition to, those of Realty Income stockholders generally. The Realty Income board of directors was aware of these interests and considered them, among other matters, in approving the Merger Agreement.

The Merger Agreement provides that immediately following the consummation of the Mergers, the Realty Income board of directors is expected to have           members, with Mr. Michael D. McKee as the non-executive chairman of the Realty Income board of directors and two directors who served as directors on the VEREIT board of directors prior to the Merger Effective Time.

The current senior leadership team of Realty Income is not expected to change as a result of the Merger. Accordingly, at the Merger Effective Time, the senior leadership team of Realty Income is expected to include Mr. Sumit Roy as president and chief executive officer, Ms. Christie B. Kelly as executive vice president, chief financial officer and treasurer, Mr. Neil M. Abraham as executive vice president and chief strategy officer, Mr. Mark E. Hagan as executive vice president and chief investment officer, Ms. Michelle Bushore as executive vice president, chief legal officer, general counsel and secretary, and Mr. Sean P. Nugent as senior vice president and controller.

47. The Registration Statement, however, fails to adequately disclose the details of all employment-related and compensation-related discussions and negotiations concerning the

11

Company's officers and directors, including the parties to such communications, when they occurred, and the specific content discussed/communicated.

48. Any communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to shareholders. This information is necessary for shareholders to understand potential conflicts of interest of management and the Board. Such information may illuminate the motivations that would prevent fiduciaries from acting solely in the best interests of the Company's shareholders.

49. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

## COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

50. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

51. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Registration Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

52. Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Registration Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and

misleading Registration Statement.

53. The false and misleading statements and omissions in the Registration Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.

54. By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

55. Because of the false and misleading statements and omissions in the Registration Statement, Plaintiff is threatened with irreparable harm.

### COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

56. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

57. The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Registration Statement.

58. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly

owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Registration Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

59. In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Registration Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Registration Statement at issue contains the recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Registration Statement.

60. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Registration Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

61. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

62. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's

shareholders will be irreparably harmed.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E. Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: June 16, 2021                    Respectfully submitted,

**HALPER SADEH LLP**

/s/ Daniel Sadeh
Daniel Sadeh, Esq.
Zachary Halper, Esq. (to be admitted *pro hac vice*)
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com
           zhalper@halpersadeh.com

*Counsel for Plaintiff*